UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

AUTUMN HAGLE,
        Plaintiff

v.


ROYAL CARIBBEAN CRUISES, LTD.
a Liberian corporation;
BROWARD COUNTY; and
INTERCRUISES SHORESIDE
& PORT SERVICES, INC.
        Defendants.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, AUTUMN HAGLE (hereinafter "Plaintiff" or "HAGLE"), hereby sues

Defendants, ROYAL CARIBBEAN CRUISES, LTD. a Liberian corporation, BROWARD

COUNTY, and INTERCRUISES SHORESIDE & PORT SERVICES INC. and files this Complaint

for Damages and says:

## THE PARTIES AND JURISDICTION

1.     This is an action for damages which exceed $75,000 exclusive of interest, costs,

and attorney's fees.

2.     **THE PLAINTIFF.**  The Plaintiff, AUTUMN HAGLE, is *sui juris* and is a citizen

and resident of Lawrenceville, Georgia.

3.     **THE DEFENDANT**.  The Defendant, ROYAL CARIBBEAN CRUISES, LTD. a

Liberian corporation (hereinafter "ROYAL CARIBBEAN" or "RCCL") a citizen of the foreign

nation of Panama, is incorporated outside of the state of Florida, but does business in the State of

1

Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto, ROYAL CARIBBEAN owned and/or operated the cruise ship on which the subject negligence occurred.

4.  **THE DEFENDANT.**  The Defendant BROWARD COUNTY (hereinafter "BROWARD COUNTY") is a political subdivision of the State of Florida and is *sui juris*. The Defendant BROWARD COUNTY was and is a government entity doing business in Broward County, Florida. The Defendant BROWARD COUNTY owned, managed, and/or operated Port Everglades in Broward County, Florida. The Defendant BROWARD COUNTY owned, operated, managed, maintained and/or controlled the terminal for vessel *RCCL Allure of the Seas* in Port Everglades, Florida including the stairwell where the incident occurred.   The Defendant BROWARD COUNTY, as the lessor of the vessel *RCCL Allure of the Seas'* terminal, managed, maintained and/or controlled the agents and/or employees working at that terminal in Port Everglades, Florida

5.  **THE DEFENDANT.** The Defendant INTERCRUISES SHORESIDE & PORT SERVICES INC (hereinafter " INTERCRUISES") is a foreign corporation with its principal place of business in Broward County, Florida and is *sui juris*. The Defendant INTERCRUISES SHORESIDE & PORT SERVICES INC was and is doing business in Broward County, Florida. Defendant INTERCRUISES conducted ground handling services at the vessel *RCCL Allure of the Seas'* terminal in Port Everglades, Florida. The Defendant INTERCRUISES, managed, maintained and/or controlled the agents and/or employees working at vessel *RCCL Allure of the Seas'* terminal in Port Everglades, Florida. Defendant INTERCRUISES, managed, maintained and/or controlled the terminal for vessel *RCCL Allure of the Seas'* in Port Everglades, Florida, including but not limited to the stairwell where the subject incident occurred.

2

6.      ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES are collectively referred to as "Defendants".

7.      **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.  Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by ROYAL CARIBBEAN.

8.      **VENUE AND PERSONAL JURISDICTION**. The Defendants, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

9.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply. Plaintiff provided all Defendants with notice of her claim for damages. Pursuant to Florida Statute §768.28, Plaintiff provided Defendant BROWARD COUNTY with notice of intent to sue.

<u>**OTHER ALLEGATIONS COMMON TO ALL COUNTS**</u>

10.    <u>**DATE OF THE INCIDENT**</u>.  The incident occurred on December 23, 2021.

11.    <u>**LOCATION OF THE INCIDENT.**</u>   The incident occurred while the Plaintiff, a passenger on board the RCCL *Allure of the Seas*, was disembarking the ship at Port Everglades. Specifically, AUTUMN HAGLE's incident occurred in a stairwell at Port Everglades. Accordingly, the Plaintiff's claims are governed by general maritime law.

12.    <u>**STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.**</u> At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee.

13.    <u>**PORT EVERGLADES**</u>. The Defendant BROWARD COUNTY owned, operated, managed, maintained and/or controlled Port Everglades, Florida including the terminal for the *RCCL Allure of the Seas* in. ROYAL CARIBBEAN leased a terminal for the *RCCL Allure of the Seas* in Port Everglades, Florida. BROWARD COUNTY and INTERCRUISES entered into an Agreement. Pursuant to the Agreement, INTERCRUISES would provide embarkation and debarkation staff to process passengers of the cruise lines including ROYAL CARIBBEAN's passengers at Port Everglades, Florida. Pursuant to the Agreement, ROYAL CARIBBEAN would pay BROWARD COUNTY for the services provided by INTERCRUISES. In turn, BROWARD COUNTY would pay INTERCRUISES for the services it provided at Port Everglades, Florida.

14.    <u>**ROYAL CARIBBEAN AND DISEMBARKATION**</u>. ROYAL CARIBBEAN as a common carrier has a non-delegable duty to furnish its passengers, including the Plaintiff, with a reasonably safe means of boarding and/or leaving the vessel. *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier

4

liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985); *Tittle v. Aldacosta*, 544 F. 2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F. 2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So. 2d 853 (Fla. 3d DCA 2004); and *Chan v. Society Expeditions*, 123 F. 3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309, 1319 (11th Cir. 2003)

15.     Because ROYAL CARIBBEAN has a non-delegable duty to provide a reasonably safe means of boarding and disembarking the *RCCL Allure of the Seas*, ROYAL CARIBBEAN knows it is extremely important to inspect, warn and make the process of embarking and disembarking the ship safe for pedestrian traffic. ROYAL CARIBBEAN also knows that its cruise passengers who board and disembark the cruise ship have different levels of physical fitness, stability, and experience with getting on and off cruise ships. For all of these reasons, during the boarding and disembarking process ROYAL CARIBBEAN must provide physical assistance, adequate lighting and/or warnings to indicate to passengers the dangerous conditions.

16.     ***RCCL ALLURE OF THE SEAS* AT PORT EVERGLADES**. In December 2021, the *RCCL Allure of the Seas'* home port was Port Everglades. BROWARD COUNTY owns and operates Port Everglades. ROYAL CARIBBEAN leased the *RCCL Allure of the Seas'* terminal from BROWARD COUNTY. INTERCRUISES was contracted to provide embarkation and debarkation staff to process ROYAL CARIBBEAN's passengers including passengers disembarking the *RCCL Allure of the Seas.* ROYAL CARIBBEAN as the lessee of the vessel Allure of the Seas' terminal, managed, maintained and/or controlled the agents and/or employees working at that terminal in Port Everglades, Florida. The Defendant BROWARD COUNTY, as

the lessor of the vessel *RCCL Allure of the Seas'* terminal, managed, maintained and/or controlled the agents and/or employees working at that terminal in Port Everglades, Florida. The Defendant INTERCRUISES, managed, maintained and/or controlled the agents and/or employees working at vessel *RCCL Allure of the Seas*' terminal in Port Everglades, Florida.

17.     While ROYAL CARIBBEAN has a non-delegable duty to provide a reasonably safe means of boarding and disembarking the *RCCL Allure of the Seas,* the cruise line utilized and relied on BROWARD COUNTY and INTERCRUISES to fulfill its duty to provide a reasonably safe means of boarding and disembarking its ships.

18.     At the end of a cruise, the *RCCL Allure of the Seas* will return to its home port. Passengers on board the *RCCL Allure of the Seas* need to disembark the ship and passengers for the next cruise will need to board the ship. In between the cruise line has to clean the ship to get it ready for the next cruise. The cruise line refers to these days as turnaround days. There are strict time constraints during these days. Any disruption will delay the ship from leaving the port as scheduled for the next cruise. The new passengers cannot board until the passengers from the completed cruise are completely off the ship. ROYAL CARIBBEAN also cannot clean the ship and the passenger cabins until the passengers from the completed cruise are out of their rooms. ROYAL CARIBBEAN gets the passengers from the completed cruise off the ship by a certain time.  If ROYAL CARIBBEAN does not get the passengers from the completed cruise off the ship by the specified time, then ROYAL CARIBBEAN will not be able to clean the ship. Additionally, if ROYAL CARIBBEAN does not get the passengers from the completed cruise off the ship by the specified time, then the passengers for the next cruise will not be able to board. Not getting the passengers from the completed cruise off the ship by the specified time is a disruption that will

cause delays. ROYAL CARIBBEAN knows this. ROYAL CARIBBEAN has and will do everything it can to prevent delays on these turnaround days.

19.     **THE DANGEROUS CONDITION**. Following the subject cruise, the *RCCL Allure of the Seas* arrived at Port Everglades as scheduled on December 23, 2021.  During the time allotted for disembarkation, Port Everglades was experiencing a power outage. BROWARD COUNTY and INTERCRUISES knew that Port Everglades was experiencing a power outage. The fact that Port Everglades was experiencing a power outage was communicated to ROYAL CARIBBEAN. The *RCCL Allure of the Seas* and ROYAL CARIBBEAN knew that Port Everglades was experiencing a power outage.

20.     The Defendants knew that there would be areas in Port Everglades that passengers would have to access that would be pitch black. The Defendants knew or should have known the dangers of accessing areas of the Port without light. The Defendants also knew or should have known that because of the power outage in Port Everglades, escalators and elevators were not working. The Defendants knew that passengers disembarking the ship would have to descend stairways while holding their luggage in the darkness. Despite knowing all of that, ROYAL CARIBBEAN's passengers on board the *RCCL Allure of the Seas* were forced to disembark the ship during the power outage.

21.     **THE INCIDENT.** The Defendants decided that it would not delay disembarkation of the *RCCL Allure of the Seas* on December 23, 2021 despite the fact that there was no power and it was not safe for passengers. ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES failed to provide any warnings or instructions to passengers as they disembarked the *RCCL Allure of the Seas.* Because there were no warnings, the Plaintiff had no knowledge about the dangerous condition.  Additionally, ROYAL CARIBBEAN, BROWARD COUNTY,

7

and INTERCRUISES failed to provide proper and adequate assistance to passengers disembarking the *RCCL Allure of the Seas.*

22.    During the power outage, ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES' employees guided passengers, including the Plaintiff from the *RCCL Allure of the Seas* as they walked down the gangway, into the terminal and into a stairwell. The stairwell was pitch black. There were no lights. Even though ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES knew this was dangerous, they decided to proceed with disembarkation.  Three employees, who were acting at the direction of and on behalf of ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES, lined up along the stairwell moving their phone lights up and down the stairs to "illuminate" the steps. This did not work. The steps were not illuminated. There was not sufficient lighting in the stairwell for passengers to safely descend the steps.  Despite that, the employees, who were acting at the direction of and on behalf of ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES instructed the passengers, including the Plaintiff to walk down the stairway. The Plaintiff did as she was told and started walking down the stairway. The Plaintiff was being cautious and was watching where she was going. However, because there was not proper or sufficient lighting in the stairwell, the Plaintiff could not observe the steps as she descended them. Because the Defendants disembarked the Plaintiff from the ship during a power outage at Port Everglades, as the Plaintiff approached the bottom of the stairwell, she could not see the step and fell forward.

23.    As a result of ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES' negligence, the Plaintiff suffered severe and permanent injuries including but not limited to avulsion fracture of the anterior process of the calcaneus of the right foot, avulsion

fracture of the dorsum talus and navicular of the right foot, and avulsion fracture involving the medial portion of the navicular bone abutting the os navicularis of the right foot.

24.     **NOTICE: THE POWER OUTAGE**. ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES knew that Port Everglades was experiencing a power outage. ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES knew that there would be areas in Port Everglades that passengers would have to access that would be pitch black. ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES knew or should have known the dangers of accessing areas of the port without light. ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES also knew or should have known that because of the power outage in Port Everglades, escalators and elevators were not working. ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES knew that passengers disembarking the ship would have to descend stairways while holding their luggage in the darkness.

25.     **NOTICE: PRIOR SIMILAR INCIDENTS**. ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES knew or should have known about the dangerous condition because of prior similar incidents. See *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1370 (11th Cir. 2018) (accepting that that prior reports of similar incidents are sufficient to provide a cruise ship operator with notice of a dangerous condition); *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"). See *Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of

one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....").

    a. On May 26, 2020, ROYAL CARIBBEAN Passenger Pamela Taylor was injured when she tripped and fell while she was disembarking the *RCCL Allure of the Seas* at Port Everglades. *Pamela Taylor v. Royal Caribbean Ltd.*, Case No.: 1:20-cv-22161.

    b. On November 14, 2016, ROYAL CARIBBEAN Passenger Barbara Freed was injured when she tripped and fell while she was disembarking the *RCCL Independence of the Seas* at Port Everglades. *Barbara Freed v. Royal Caribbean Ltd. & Broward County,* Case No.: 1:17-cv-23105.

    c. On August 2, 2015, ROYAL CARIBBEAN Passenger Nilda Grisoni was injured while she was embarking the *RCCL Independence of the Seas* at Port Everglades. *Nilda Grisoni v. Royal Caribbean Ltd.; Broward County & Intercruises Shoreside & Port Services Inc.,* Case No.: 1:16-cv-23285

    d. On February 1, 2019, Celebrity Cruise Passenger Linda Gershen was injured while she was disembarking the *Celebrity Silhouette* at Port Everglades. *Linda Gershen v. Celebrity Cruises & Broward County*, Case No.: 1:20-cv-20428. Royal Caribbean is the owner and operator of Celebrity Cruises.

    26. **NOTICE: CREW MEMBERS IN THE VICINITY**. Additionally, ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES knew or should have known about the dangerous condition because ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES crew members and employees who were acting at the direction of and on behalf of ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES were in the area and

could have easily observed the dangerous condition. *Plott v. NCL Am., LLC*, 786 Fed. Appx. 199, 203 (11th Cir. 2019) citing *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 272 S.E.2d 327, 330 (Ga. 1980) ("In some cases the proprietor may be held to have constructive knowledge if the plaintiff shows that an employee of the proprietor was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard." (quotation marks omitted)); *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018) ("[The] facts place the crew member in the immediate vicinity of a puddle of soap that was one-and-a-half feet in diameter.  Drawing all reasonable inferences in [plaintiff's] favor, a factfinder could conclude that the crew member knew or should have known about the puddle of soap at his feet and either removed the hazard or warned [plaintiff] of it."). *Haiser v. MSC Cruises (USA) Inc.*, 2019 WL 4693200, at *5 (S.D. Fla. Aug. 9, 2019) (denying summary judgment in part where a "reasonable factfinder could conclude that crewmembers knew or should have known about the presence of water on floor since they were in the immediate vicinity and based on the amount of time the water was there."); *Markowitz v. Helen Homes of Kendall Corp.*, 826 So.2d 256, 261 (Fla. 2002) ("The fact that there were three employees in the vicinity of where the fall occurred is sufficient to create a jury question as to whether [Defendant] exercised reasonable care under the circumstances to maintain its premises in a safe condition.")

    27.   **NOTICE: POLICY AND PROCEDURES.**  Additionally, ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES knew or should have known about the dangerous condition from their policies and procedures which dictate safe boarding and disembarkation of a vessel.

    28.   **NOTICE: VIOLATION OF INDUSTRY STANDARDS**. Additionally, ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES knew or should have known about

the dangerous condition from relevant industry standards, regulations, and codes which dictate safe boarding and disembarkation of a vessel. Further, ROYAL CARIBBEAN, BROWARD COUNTY, and INTERCRUISES knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells. [T]he law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11–20723–CIV, 2012 WL 1792628, at *3 (S.D.Fla. May 15, 2012) (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir.1978)). Such guidelines are also probative of RCCL's and Dolphin Encounters' constructive knowledge of the allegedly hazardous condition. See *Cook*, 2012 WL 1792628, at *3; *Donlon v. Gluck Grp., LLC*, No. 09–5379 (JEI/KMW), 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011); See *Holderbaum v. Carnival Corp.,* 87 F. Supp. 3d 1345 (S.D. Fla. February 19, 2015) (the court held that based on the IMO recommendation and the record evidence, a reasonable jury could conclude that the handrail was too large, hazardous, and that Defendant knew it was too large and hazardous) *Muncie Aviation Corp.,* 519 F.2d at 1181 (holding that to the extent the defendant's pilot failed to consult advisory materials issued by the Federal Aviation Administration, or failed to follow their recommendations, "the jury could permissibly infer that he failed to meet the appropriate standard of due care"); *Frazier*, 568 F.2d at 381–82 (holding that the district court erroneously excluded testimony concerning violations of industry standards to establish the defendant's negligence); see also *Donlon*, 2011 WL 6020574, at *6 (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the American Society for Testing and Materials were admissible

12

because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs").

**COUNT I**
**BREACH OF NON-DELEGABLE DUTIES:**
**FAILURE TO PROVIDE**
**A REASONABLY SAFE MEANS OF**
**DISEMBARKING THE VESSEL**
**AGAINST**
**ROYAL CARIBBEAN**

29.     The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

30.     This is an action against ROYAL CARIBBEAN for breaching of its non-delegable duty to provide a safe means of disembarking the vessel.

31.     **DUTIES OWED BY RCCL**. ROYAL CARIBBEAN as a common carrier has a non-delegable duty to furnish its passengers, including the Plaintiff, with a reasonably safe means of boarding and/or leaving the vessel. *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985); *Tittle v. Aldacosta*, 544 F. 2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F. 2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So. 2d 853 (Fla. 3d DCA 2004); and *Chan v. Society Expeditions*, 123 F. 3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309, 1319 (11th Cir. 2003).

32.     This duty, to provide a reasonably safe means of boarding and/or leaving the vessel, is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc*., 339 F. 3d 1309, 1319 (11th Cir. 2003). ROYAL CARIBBEAN is directly negligent for failing to provide a safe means of disembarking the RCCL *Allure of the Seas.*

33.     **RCCL BREACHED ITS DUTIES.**  ROYAL CARIBBEAN breached its non-delegable duty to furnish its passengers, including the Plaintiff, with a reasonably safe means of disembarking the vessel. ROYAL CARIBBEAN forced passengers, including the Plaintiff, to disembark the ship while there was a power outage at Port Everglades. ROYAL CARIBBEAN subjected its passengers, including the Plaintiff, to these unsafe and dangerous conditions while disembarking the vessel. There were no ROYAL CARIBBEAN crew members or employees providing proper assistance to passengers disembarking the the RCCL *Allure of the Seas.* ROYAL CARIBBEAN failed to ensure that its passengers had a reasonably safe means of disembarking the RCCL *Allure of the Seas.*

34.     **PROXIMATE CAUSE**. As a direct result of ROYAL CARIBBEAN'S failure to provide a reasonably safe means of disembarking the vessel, ROYAL CARIBBEAN proximately caused harmed to HAGLE. ROYAL CARIBBEAN is directly liable for its failure to comply with its non-delegable duty to provide the Plaintiff a reasonably safe means of disembarking the vessel. As a direct result of ROYAL CARIBBEAN'S failure to provide a reasonably safe means of disembarking the vessel, HAGLE suffered the injuries. These injuries are permanent and significantly affect the life and abilities of HAGLE.

35.     **DAMAGES**. ROYAL CARIBBEAN's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include

but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against ROYAL CARIBBEAN for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

<u>**COUNT II**</u>
<u>**NEGLIGENT OPERATION**</u>
<u>**AGAINST**</u>
<u>**ROYAL CARIBBEAN**</u>

36.     The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

37.     This is an action against ROYAL CARIBBEAN for its negligent operation of its disembarkation process on December 23, 2021.

38.     ROYAL CARIBBEAN is vicariously liable and responsible for the negligent acts of its shipboard crew members and/or its agents. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

39.     **DUTIES OWED BY RCCL**.   ROYAL CARIBBEAN owes a "duty to exercise reasonable care for the safety of its passengers," including HAGLE. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). ROYAL CARIBBEAN also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). ROYAL CARIBBEAN is directly negligent for operating the *disembarkation process* in an unsafe manner on December 23, 2021.

40.     ROYAL CARIBBEAN owes a duty as a common carrier to its passengers to provide safe ingress and egress to and from the ship. *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985); *Tittle v. Aldacosta*, 544 F. 2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F. 2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So. 2d 853 (Fla. 3d DCA 2004); and *Chan v. Society Expeditions*, 123 F. 3d 1287 (9th Cir. 1997).  More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013

WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.*, 339 F. 3d 1309, 1319 (11th Cir. 2003).

41.     ROYAL CARIBBEAN owes a duty of reasonable care under the circumstances. The circumstances are as follows. Disembarking the cruise ship can be dangerous.  This is an ongoing, continuous problem of which ROYAL CARIBBEAN is well-aware. For these reasons, ROYAL CARIBBEAN's duty of care includes operating its disembarkation process in a safe manner.

42.     ROYAL CARIBBEAN had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

43.     ROYAL CARIBBEAN knew or should have known about the dangerous condition because ROYAL CARIBBEAN knew that there was a power outage at Port Everglades on December 23, 2021.

44.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from prior similar incidents. ROYAL CARIBBEAN documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

45.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition because ROYAL CARIBBEAN crew members and employees who were acting at the direction of and on behalf of ROYAL CARIBBEAN were in the area and could have easily observed the dangerous condition.

46.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from their policies and procedures dictate safe boarding and disembarkation of a vessel.

47.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe boarding and disembarkation of a vessel. Further, ROYAL CARIBBEAN knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

48.     **RCCL BREACHED ITS DUTIES**. ROYAL CARIBBEAN breached its duties by failing to operate of its disembarkation process from the RCCL Allure of the Seas in a safe manner on December 23, 2021. ROYAL CARIBBEAN breached its duties as follows:

   a.   Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case;

   b.   Failing to take reasonable care for the safety of passengers;

   c.   Failing to provide safe walkways and stairways for passengers to disembark the ship;

   d.   Failing to provide adequate lighting for passengers to disembark the ship;

   e.   Failing to maintain the subject area in good and safe condition;

   f.   Failing to appropriately inspect the premises

   g.   Failing to promulgate safety rules regarding disembarkation;

   h.   Failing to implement safety rules regarding disembarkation;

   i.   Failing to train its crewmembers, employees, and agents about safety rules regarding disembarkation;

  j. Failing to enforce safety rules regarding disembarkation;

  k. Allowing an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause incidents or injuries; and

  l. Failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence.

49. **PROXIMATE CAUSE**. ROYAL CARIBBEAN's failure to operate its debarkation process in a safe manner on December 23, 2021 proximately and directly caused the Plaintiff's injuries. Had ROYAL CARIBBEAN operated its debarkation process in a safe manner on December 23, 2021, the Plaintiff would have never been injured.

50. **DAMAGES**. ROYAL CARIBBEAN's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against ROYAL CARIBBEAN for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in

the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

### COUNT III
### NEGLIGENT FAILURE TO WARN
### AGAINST
### ROYAL CARIBBEAN

51.      The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

52.      This is an action against ROYAL CARIBBEAN for its negligent failing to warn passengers, including HAGLE, of its hazards, risks or dangers.

53.      ROYAL CARIBBEAN is vicariously liable and responsible for the negligent acts of its shipboard crew members and/or its agents. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

54.      **DUTIES OWED BY RCCL**.  ROYAL CARIBBEAN owes a "duty to exercise reasonable care for the safety of its passengers," including HAGLE. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). ROYAL CARIBBEAN also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003). ROYAL CARIBBEAN is directly negligent for failing to warn its passengers of the dangerous condition.

55.      ROYAL CARIBBEAN as a common carrier has a non-delegable duty to furnish its passengers, including the Plaintiff, with a reasonably safe means of boarding and/or leaving the vessel.

*See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985); *Tittle v. Aldacosta*, 544 F. 2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F. 2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So. 2d 853 (Fla. 3d DCA 2004); and *Chan v. Society Expeditions*, 123 F. 3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309, 1319 (11th Cir. 2003).

56.     ROYAL CARIBBEAN, as a common carrier, has a reasonable duty to its passengers to warn of dangers known to ROYAL CARIBBEAN where ROYAL CARIBBEAN invites or reasonably expect passengers to go. As part of that, ROYAL CARIBBEAN has a duty to warn passengers about the dangers of disembarking the cruise ship.

57.     ROYAL CARIBBEAN owes a duty of reasonable care under the circumstances. The circumstances are as follows. Disembarking the cruise ship can be dangerous. This is an ongoing, continuous problem of which ROYAL CARIBBEAN is well-aware. For these reasons, ROYAL CARIBBEAN's duty of care includes warning passengers about dangerous conditions including the dangerous condition where HAGLE was injured on December 23, 2021.

58.     ROYAL CARIBBEAN had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

59.     ROYAL CARIBBEAN knew or should have known about the dangerous condition because ROYAL CARIBBEAN knew that there was a power outage at Port Everglades on December 23, 2021.

60.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from prior similar incidents. ROYAL CARIBBEAN documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

61.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition because ROYAL CARIBBEAN crew members and employees who were acting at the direction of and on behalf of ROYAL CARIBBEAN were in the area and could have easily observed the dangerous condition.

62.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from their policies and procedures dictate safe boarding and disembarkation of a vessel.

63.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe boarding and disembarkation of a vessel. Further, ROYAL CARIBBEAN knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

64.     ROYAL CARIBBEAN is aware that it owes a duty as a common carrier to its passengers to warn of dangers known to ROYAL CARIBBEAN where ROYAL CARIBBEAN invites or reasonably expect passengers to go. ROYAL CARIBBEAN distributes crew member

22

training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.  ROYAL CARIBBEAN train its crew members to warn passengers of hazardous or dangerous conditions verbally, with warning signs, and/or marking the area to prevent passengers from injuring themselves on the hazardous or dangerous condition. Despite that, ROYAL CARIBBEAN failed to warn the Plaintiff about the dangerous condition.

65.   **RCCL BREACHED ITS DUTIES.**  ROYAL CARIBBEAN breached its duties by failing to properly, adequately, and/or reasonably warn HAGLE about dangerous conditions including the dangerous condition where HAGLE was injured on December 23, 2021. ROYAL CARIBBEAN breached its duties to the Plaintiff by its actions and conduct. ROYAL CARIBBEAN failed to warn its passengers including the Plaintiff about the power outage and the dangerous of using the stairwell with inadequate lighting. ROYAL CARIBBEAN through its crew members and/or agent failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices. ROYAL CARIBBEAN's crew members failed to reasonably and regularly make audible announcements about the dangerous condition. ROYAL CARIBBEAN also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. ROYAL CARIBBEAN's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

66.   **PROXIMATE CAUSE**. ROYAL CARIBBEAN's failure to properly and adequately warn HAGLE about dangerous conditions including the dangerous condition where HAGLE was injured on December 23 2021, proximately caused the Plaintiff's injuries. Had ROYAL CARIBBEAN properly warned HAGLE of the dangerous conditions, HAGLE would

have been aware of the dangerous conditions. HAGLE therefore would have never been injured on December 23, 2021.

67.    **DAMAGES**. ROYAL CARIBBEAN's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against ROYAL CARIBBEAN for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

<u>**COUNT IV**</u>
<u>**NEGLIGENT TRAINING**</u>
<u>**AGAINST**</u>
<u>**ROYAL CARIBBEAN**</u>

68.     The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

69.     This is an action against ROYAL CARIBBEAN for its negligent training of its shipboard crew members and/or its agents.

70.     ROYAL CARIBBEAN is vicariously liable and responsible for the negligent acts of its shipboard crew members and/or its agents. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

71.     **<u>DUTIES OWED BY RCCL</u>**.  ROYAL CARIBBEAN owes a "duty to exercise reasonable care for the safety of its passengers," including HAGLE. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). RCCL also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). ROYAL CARIBBEAN is directly negligent for failing to train its shipboard crew members and/or its agents.

72.     ROYAL CARIBBEAN owes a duty as a common carrier to its passengers to provide safe ingress and egress to and from the ship. *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985); *Tittle v. Aldacosta*, 544 F. 2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F. 2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So. 2d 853 (Fla. 3d DCA 2004); and *Chan v. Society Expeditions*, 123 F. 3d 1287

(9th Cir. 1997).  More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc*., 339 F. 3d 1309, 1319 (11th Cir. 2003).

73.     ROYAL CARIBBEAN owes a duty as a common carrier to its passengers to train its crewmembers and/or its agents to provide a safe means of disembarking the RCCL *Allure of the Seas.* ROYAL CARIBBEAN knew or should have known of the importance of training its crew members and/or its agents to provide a safe means of disembarking the RCCL *Allure of the Seas.* However, despite knowing how and the reason why ROYAL CARIBBEAN should train its crewmembers and/or its agents how to provide passengers a safe means of disembarking the RCCL *Allure of the Seas*, ROYAL CARIBBEAN failed to do so.

74.     ROYAL CARIBBEAN also owes a duty as a common carrier to its passengers to train its crewmembers and/or its agents to warn of dangers known to ROYAL CARIBBEAN where ROYAL CARIBBEAN invites or reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. ROYAL CARIBBEAN knew or should have known of the importance of training its crewmembers and/or its agents to warn passengers about dangerous conditions.  ROYAL CARIBBEAN knows or should have known that passenger may not know how dangerous disembarking the cruise ship can be. ROYAL CARIBBEAN knew or should have known of the importance of training its crew members and/or its agents to warn passengers of dangerous conditions verbally, and with warning signs. ROYAL

CARIBBEAN also distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos. However, despite knowing how and the reason why ROYAL CARIBBEAN should train its crewmembers and/or its agents to warn passengers about dangerous conditions, ROYAL CARIBBEAN failed to do so.

75.     ROYAL CARIBBEAN had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

76.     ROYAL CARIBBEAN knew or should have known about the dangerous condition because ROYAL CARIBBEAN knew that there was a power outage at Port Everglades on December 23, 2021.

77.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from prior similar incidents. ROYAL CARIBBEAN documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

78.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition because ROYAL CARIBBEAN crew members and employees who were acting at the direction of and on behalf of ROYAL CARIBBEAN were in the area and could have easily observed the dangerous condition.

79.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from their policies and procedures dictate safe boarding and disembarkation of a vessel.

80.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe

boarding and disembarkation of a vessel. Further, ROYAL CARIBBEAN knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

81.     Additionally, when a Plaintiff makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability, the Plaintiff need not establish that the shipowner had actual or constructive notice of a risk-creating condition. *Yusko v. NCL,* 4 F.4th 1164 (11th Cir. 2021).

82.     **RCCL BREACHED ITS DUTIES**. ROYAL CARIBBEAN breached its duty of care owed to HAGLE and was negligent by failing to reasonably train its crew members and/or its agents. ROYAL CARIBBEAN breached its duties by failing to train its crew members and/or its agent on how to provide a safe means of disembarking the RCCL *Allure of the Seas.* ROYAL CARIBBEAN breached its duties by failing to train its crew members and/or its agents to warn of dangers known to ROYAL CARIBBEAN where ROYAL CARIBBEAN invites or reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. ROYAL CARIBBEAN also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. ROYAL CARIBBEAN's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

83.     **PROXIMATE CAUSE**. ROYAL CARIBBEAN's failure to properly and adequately train its crew members and/or its agents proximately caused HAGLE's injuries.  Had ROYAL CARIBBEAN properly trained its crew members and/or its agents, HAGLE would not have been injured on December 23, 2021. Had ROYAL CARIBBEAN properly trained its crew

members and/or its agents on how to provide a safe means of disembarking the RCCL *Allures of the Seas*, HAGLE would not have been injured on December 23, 2021. Had ROYAL CARIBBEAN properly trained its crew members and/or its agents to warn passengers about the dangerous conditions including the dangerous condition where HAGLE was injured on December 23, 2021, the crewmember and/or its agents would have warned HAGLE and she would have been aware of the dangerous condition.

84.   **DAMAGES**. ROYAL CARIBBEAN's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against ROYAL CARIBBEAN for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due

under the applicable law including interest from the date of the subject incident under the General

Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT V
## NEGLIGENT SUPERVISION
## AGAINST
## ROYAL CARIBBEAN

85.     The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in

paragraphs 1 through 28, above.

86.     This is an action against ROYAL CARIBBEAN for its negligent supervision of its

shipboard crew members and/or its agents.

87.     ROYAL CARIBBEAN is vicariously liable and responsible for the negligent acts

of its shipboard crew members and/or its agents. *See Franza v. Royal Caribbean Cruise Line, Ltd.*,

772 F.3d 1225 (11th Cir. 2014).

88.     **DUTIES OWED BY RCCL**.  ROYAL CARIBBEAN owes a "duty to exercise

reasonable care for the safety of its passengers," including HAGLE. *See Hall v. Royal Caribbean

Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). RCCL also owes a "duty to exercise

reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL

329584 (S.D. Fla. 1991). ROYAL CARIBBEAN is directly negligent for failing to supervise its

shipboard crew members and/or its agents.

89.     ROYAL CARIBBEAN owes a duty as a common carrier to its passengers to

provide safe ingress and egress to and from the ship. *See Vierling v. Celebrity Cruises, Inc.,* 339

F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the

part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the

vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier

liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985); *Tittle v. Aldacosta*,

544 F. 2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F. 2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So. 2d 853 (Fla. 3d DCA 2004); and *Chan v. Society Expeditions*, 123 F. 3d 1287 (9th Cir. 1997).  More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc*., 339 F. 3d 1309, 1319 (11th Cir. 2003).

90.    ROYAL CARIBBEAN owes a duty as a common carrier to its passengers to supervise its crewmembers and/or its agents to ensure they are providing a safe means of disembarking the RCCL *Allure of the Seas.* ROYAL CARIBBEAN knew or should have known of the importance of supervising its crew members and/or its agents to ensure they are providing a safe means of disembarking the RCCL *Allure of the Seas.* However, despite knowing how and the reason why ROYAL CARIBBEAN should supervise its crewmembers and/or its agents to ensure they are providing passengers a safe means of disembarking the RCCL *Allure of the Seas*, ROYAL CARIBBEAN failed to do so.

91.    ROYAL CARIBBEAN also owes a duty as a common carrier to its passengers to supervise its crewmembers and/or its agents to ensure they are warning of dangers known to ROYAL CARIBBEAN where ROYAL CARIBBEAN invites or reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. ROYAL CARIBBEAN knew or should have known of the importance of supervising its crewmembers and/or its agents to ensure they are warning passengers about dangerous conditions.  ROYAL

CARIBBEAN knows or should have known that passenger may not know how dangerous disembarking the cruise ship can be. ROYAL CARIBBEAN knew or should have known of the importance of supervising its crewmembers and/or its agents to ensure they are warning passengers of dangerous conditions verbally, and with warning signs. ROYAL CARIBBEAN also distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos. However, despite knowing how and the reason why ROYAL CARIBBEAN should supervise its crewmembers and/or its agents to ensure they are warning passengers about dangerous conditions, ROYAL CARIBBEAN failed to do so.

92.     ROYAL CARIBBEAN had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

93.     ROYAL CARIBBEAN knew or should have known about the dangerous condition because ROYAL CARIBBEAN knew that there was a power outage at Port Everglades on December 23, 2021.

94.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from prior similar incidents. ROYAL CARIBBEAN documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

95.     Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition because ROYAL CARIBBEAN crew members and employees who were acting at the direction of and on behalf of ROYAL CARIBBEAN were in the area and could have easily observed the dangerous condition.

96.    Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from their policies and procedures dictate safe boarding and disembarkation of a vessel.

97.    Additionally, ROYAL CARIBBEAN knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe boarding and disembarkation of a vessel. Further, ROYAL CARIBBEAN knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

98.    Additionally, when a Plaintiff makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability, the Plaintiff need not establish that the shipowner had actual or constructive notice of a risk-creating condition. *Yusko v. NCL,* 4 F.4th 1164 (11th Cir. 2021).

99.    **RCCL BREACHED ITS DUTIES**. ROYAL CARIBBEAN breached its duty of care owed to HAGLE and was negligent by failing to reasonably supervise its crew members and/or its agents. ROYAL CARIBBEAN breached its duties by failing to supervise its crew members and/or its agent to ensure they were providing a safe means of disembarking the RCCL *Allure of the Seas*. ROYAL CARIBBEAN breached its duties by failing to supervise its crew members and/or its agents to ensure they were warning about the dangers known to ROYAL CARIBBEAN where ROYAL CARIBBEAN invites or reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. ROYAL CARIBBEAN also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. ROYAL

33

CARIBBEAN's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

100. **PROXIMATE CAUSE**. ROYAL CARIBBEAN's failure to properly and adequately supervise its crew members and/or its agents proximately caused HAGLE's injuries. Had ROYAL CARIBBEAN properly supervised its crew members and/or its agents, HAGLE would not have been injured on December 23, 2021. Had ROYAL CARIBBEAN properly supervised its crew members and/or its agents to ensure they were providing a safe means of disembarking the RCCL *Allures of the Seas*, HAGLE would not have been injured on December 23, 2021. Had ROYAL CARIBBEAN properly supervised its crew members and/or its agents to ensure they were warning passengers about the dangerous conditions including the dangerous condition where HAGLE was injured on December 23, 2021, the crewmember and/or its agents would have warned HAGLE and she would have been aware of the dangerous condition.

101. **DAMAGES**. ROYAL CARIBBEAN's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against ROYAL CARIBBEAN for damages recoverable under the general maritime law and state law including but not limited to

economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT VI**
**NEGLIGENT OPERATION**
**AGAINST**
**BROWARD COUNTY**

102.     The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

103.     This is an action against BROWARD COUNTY for its negligent operation of its disembarkation process on December 23, 2021.

104.     BROWARD COUNTY is vicariously liable and responsible for the negligent acts of its employees and/or its agents.

105.     **DUTIES OWED BY BROWARD COUNTY.** BROWARD COUNTY owes a reasonable duty under the circumstances. BROWARD COUNTY has a duty to provide a safe means of embarking and disembarking vessels using its ports and terminals at Port Everglades, Florida including the *RCCL Allure of the Seas*.

106.     BROWARD COUNTY had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

107.    BROWARD COUNTY knew or should have known about the dangerous condition because BROWARD COUNTY knew that there was a power outage at Port Everglades on December 23, 2021.

108.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from prior similar incidents.

109.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from its employees or agents who were in the area and could have easily observed the dangerous condition.

110.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from their policies and procedures which dictate safe boarding and disembarkation of a vessel.

111.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe boarding and disembarkation of a vessel. Further, BROWARD COUNTY knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

112.    **BROWARD COUNTY BREACHED ITS DUTIES**. BROWARD COUNTY breached its duties by failing to operate of its disembarkation process from the *RCCL Allure of the Seas* in a safe manner on December 23, 2021. BROWARD COUNTY breached its duties as follows:

a.    Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case;

b.    Failing to take reasonable care for the safety of passengers;

c.  Failing to provide safe walkways and stairways for passengers to disembark the ship;

d.  Failing to provide adequate lighting for passengers to disembark the ship;

e.  Failing to maintain the subject area in good and safe condition;

f.  Failing to appropriately inspect the premises

g.  Failing to promulgate safety rules regarding disembarkation;

h.  Failing to implement safety rules regarding disembarkation;

i.  Failing to train its crewmembers, employees, and agents about safety rules regarding disembarkation;

j.  Failing to enforce safety rules regarding disembarkation;

k.  Allowing an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause incidents or injuries; and

l.  Failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence.

113.  **PROXIMATE CAUSE**. BROWARD COUNTY's failure to operate its debarkation process in a safe manner on December 23, 2021 proximately and directly caused the Plaintiff's injuries. Had BROWARD COUNTY operated its debarkation process in a safe manner on December 23, 2021, the Plaintiff would have never been injured.

114.  **DAMAGES**. BROWARD COUNTY's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and

damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against BROWARD COUNTY for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

<u>**COUNT VII**</u>
<u>**NEGLIGENT FAILURE TO WARN**</u>
<u>**AGAINST**</u>
<u>**BROWARD COUNTY**</u>

115.     The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

116.     This is an action against BROWARD COUNTY for its negligent failing to warn passengers, including HAGLE, of its hazards, risks or dangers.

117.     BROWARD COUNTY is vicariously liable and responsible for the negligent acts of its employees and/or its agents.

118.     <u>**DUTIES OWED BY BROWARD COUNTY.**</u> BROWARD COUNTY owes a reasonable duty under the circumstances. BROWARD COUNTY has a duty to warn of dangers

known to the Defendant in places where a passenger is invited to may reasonably be expected to visit. BROWARD COUNTY also has a duty to provide a safe means of embarking and disembarking vessels using its ports and terminals at Port Everglades, Florida including the *RCCL Allure of the Seas*. As part of that, BROWARD COUNTY has a duty to warn passengers like the Plaintiff about the dangers of disembarking the cruise ship including the dangerous condition where HAGLE was injured on December 23, 2021.

119.    BROWARD COUNTY had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

120.    BROWARD COUNTY knew or should have known about the dangerous condition because BROWARD COUNTY knew that there was a power outage at Port Everglades on December 23, 2021.

121.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from prior similar incidents.

122.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from its employees or agents who were in the area and could have easily observed the dangerous condition.

123.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from their policies and procedures which dictate safe boarding and disembarkation of a vessel.

124.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe boarding and disembarkation of a vessel. Further, BROWARD COUNTY knew or should have

known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

125. **BROWARD COUNTY BREACHED ITS DUTIES.** BROWARD COUNTY breached its duties by failing to properly, adequately, and/or reasonably warn HAGLE about dangerous conditions including the dangerous condition where HAGLE was injured on December 23, 2021. BROWARD COUNTY breached its duties to the Plaintiff by its actions and conduct. BROWARD failed to warn its passengers including the Plaintiff about the power outage and the dangerous of using the stairwell with inadequate lighting. BROWARD COUNTY through its employees and/or agent failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices. BROWARD COUNTY failed to reasonably and regularly make audible announcements about the dangerous condition. BROWARD COUNTY also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

126. **PROXIMATE CAUSE**. BROWARD COUNTY's failure to properly and adequately warn HAGLE about dangerous conditions including the dangerous condition where HAGLE was injured on December 23 2021, proximately caused the Plaintiff's injuries. Had BROWARD COUNTY properly warned HAGLE of the dangerous conditions, HAGLE would have been aware of the dangerous conditions. HAGLE therefore would have never been injured on December 23, 2021.

127. **DAMAGES**. BROWARD COUNTY's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses

in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against BROWARD COUNTY for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

<u>**COUNT VIII**</u>
<u>**NEGLIGENT RETENTION**</u>
<u>**AGAINST**</u>
<u>**BROWARD COUNTY**</u>

128.    The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

129.    This is an action against BROWARD COUNTY for its negligent retention of INTERCRUISES.

130.    **<u>DUTIES OWED BY BROWARD COUNTY.</u>** BROWARD COUNTY owes a reasonable duty under the circumstances. BROWARD COUNTY has a duty to provide a safe means

of embarking and disembarking vessels using its ports and terminals at Port Everglades, Florida including the *RCCL Allure of the Seas.*

131.    BROWARD COUNTY owes a duty of reasonable care under the circumstances to retain safe and competent staff who will be embarking and disembarking cruise ship passengers including the Plaintiff. Disembarking from a cruise ship can be dangerous. Thus, in retaining INTERCRUISES, BROWARD COUNTY was required to exercise reasonable care to avoid retaining an unfit or incompetent entity who would be providing the embarking and disembarking staff for the cruise ships at Port Everglades, Florida.

132.    BROWARD COUNTY knew or should have known that INTERCRUISES was not fit to disembark passengers from cruise ships.

133.    BROWARD COUNTY had actual notice of the dangerous condition; and/or had constructive notice.

134.    BROWARD COUNTY knew or should have known from prior similar incidents in which cruise ship passengers were injured during embarking or disembarking a cruise ship that INTERCRUISES was unfit.

135.    **<u>BROWARD COUNTY BREACHED ITS DUTIES</u>**. BROWARD COUNTY breached its duty by continuing to retain INTERCRUISES after it knew or should have known that INTERCRUISES was unfit and did not provide cruise ship passengers a reasonably safe means of embarking and disembarking vessels using its ports and terminals at Port Everglades, Florida. BROWARD COUNTY breached its duty of care by ignoring, failing to correct, and/or otherwise not acting on and/or preventing its cruise passengers, like the Plaintiff from an unsafe means of disembarkation from the cruise ship.

136. **PROXIMATE CAUSE**. BROWARD COUNTY'S negligent retention of INTERCRUISES proximately caused the Plaintiff's injuries. Because BROWARD COUNTY failed to retain an entity who could provide cruise ship passengers with a safe means of disembarkation from the cruise ship, the Plaintiff was injured on December 23, 2021. Had BROWARD COUNTY properly retained an entity who could provide passengers like the Plaintiff with a safe means of disembarking the *RCCL Allure of the Seas*, the Plaintiff would have never been injured on December 23, 2021.

137. **DAMAGES**. BROWARD COUNTY's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against BROWARD COUNTY for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due

43

under the applicable law including interest from the date of the subject incident under the General

Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT IX**
**NEGLIGENT TRAINING**
**AGAINST**
**BROWARD COUNTY**

138.    The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in

paragraphs 1 through 28, above.

139.    This is an action against BROWARD COUNTY for its negligent training of its

employees and/or its agents.

140.    BROWARD COUNTY is vicariously liable and responsible for the negligent acts

of its employees and/or its agents.

141.    **DUTIES OWED BY BROWARD COUNTY.** BROWARD COUNTY owes a

reasonable duty under the circumstances. BROWARD COUNTY has a duty to provide a safe means

of embarking and disembarking vessels using its ports and terminals at Port Everglades, Florida

including the *RCCL Allure of the Seas.*

142.    BROWARD COUNTY owes a duty to train its employees and/or its agents how to

provide a safe means of disembarking cruise ships. BROWARD COUNTY knew or should have

known of the importance of training its employees and/or its agents how to provide a safe means

of disembarking cruise ships. However, despite knowing how and the reason why BROWARD

COUNTY should train its employees and/or its agents how to provide passengers a safe means of

disembarking cruise ships including the *RCCL Allure of the Seas*, BROWARD COUNTY failed

to do so.

143.    BROWARD COUNTY also owes a duty to train its employees and/or its agents to

warn of dangers known to BROWARD COUNTY where BROWARD COUNTY invites or

44

reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. BROWARD COUNTY knew or should have known of the importance of training its employees and/or its agents to warn passengers about dangerous conditions. BROWARD COUNTY knows or should have known that passengers may not know how dangerous disembarking the cruise ship can be. BROWARD COUNTY knew or should have known of the importance of training its employees and/or its agents to warn passengers of dangerous conditions verbally, and with warning signs. However, despite knowing how and the reason why BROWARD COUNTY should train its employees and/or its agents to warn passengers about dangerous conditions, BROWARD COUNTY failed to do so.

144.    BROWARD COUNTY had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

145.    BROWARD COUNTY knew or should have known about the dangerous condition because BROWARD COUNTY knew that there was a power outage at Port Everglades on December 23, 2021.

146.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from prior similar incidents.

147.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from its employees or agents who were in the area and could have easily observed the dangerous condition.

148.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from their policies and procedures which dictate safe boarding and disembarkation of a vessel.

149.    Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe boarding and disembarkation of a vessel. Further, BROWARD COUNTY knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

150.    **BROWARD COUNTY BREACHED ITS DUTIES**. BROWARD COUNTY breached its duty of care owed to HAGLE and was negligent by failing to reasonably train its employees and/or its agents. BROWARD COUNTY breached its duties by failing to train its employees and/or its agent on how to provide a safe means of disembarking the RCCL *Allure of the Seas.* BROWARD COUNTY breached its duties by failing to train its employees and/or its agents to warn of dangers known to BROWARD COUNTY where BROWARD COUNTY invites or reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. BROWARD COUNTY also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

151.    **PROXIMATE CAUSE**. BROWARD COUNTY's failure to properly and adequately train its employees and/or its agents proximately caused HAGLE's injuries.  Had BROWARD COUNTY properly trained its employees and/or its agents, HAGLE would not have been injured on December 23, 2021. Had BROWARD COUNTY properly trained its employees and/or its agents on how to provide a safe means of disembarking the RCCL *Allures of the Seas*, HAGLE would not have been injured on December 23, 2021. Had BROWARD COUNTY properly trained its employees and/or its agents to warn passengers about the dangerous conditions including

46

the dangerous condition where HAGLE was injured on December 23, 2021, the employees and/or its agents would have warned HAGLE and she would have been aware of the dangerous condition.

152.   **DAMAGES**. BROWARD COUNTY's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against BROWARD COUNTY for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT X**
**NEGLIGENT SUPERVISION**
**AGAINST**
**BROWARD COUNTY**

153.　　The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

154.　　This is an action against BROWARD COUNTY for its negligent supervision of its employees and/or its agents.

155.　　BROWARD COUNTY is vicariously liable and responsible for the negligent acts of its employees and/or its agents.

156.　　**DUTIES OWED BY BROWARD COUNTY.** BROWARD COUNTY owes a reasonable duty under the circumstances. BROWARD COUNTY has a duty to provide a safe means of embarking and disembarking vessels using its ports and terminals at Port Everglades, Florida including the *RCCL Allure of the Seas.*

157.　　BROWARD COUNTY owes a duty to supervise its employees and/or its agents to ensure they are providing a safe means of disembarking the RCCL *Allure of the Seas.* BROWARD COUNTY knew or should have known of the importance of supervising its employees and/or its agents to ensure they are providing a safe means of disembarking the RCCL *Allure of the Seas.* However, despite knowing how and the reason why BROWARD COUNTY should supervise its employees and/or its agents to ensure they are providing passengers a safe means of disembarking the RCCL *Allure of the Seas*, BROWARD COUNTY failed to do so.

158.　　BROWARD COUNTY also owes a duty to supervise its employees and/or its agents to ensure they are warning of dangers known to BROWARD COUNTY where BROWARD COUNTY invites or reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. BROWARD COUNTY knew or should have known

of the importance of supervising its employees and/or its agents to ensure they are warning passengers about dangerous conditions. BROWARD COUNTY knows or should have known that passengers may not know how dangerous disembarking the cruise ship can be. BROWARD COUNTY knew or should have known of the importance of supervising its employees and/or its agents to ensure they are warning passengers of dangerous conditions verbally, and with warning signs. However, despite knowing how and the reason why BROWARD COUNTY should supervise its employees and/or its agents to ensure they are warning passengers about dangerous conditions, BROWARD COUNTY failed to do so.

159. BROWARD COUNTY had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

160. BROWARD COUNTY knew or should have known about the dangerous condition because BROWARD COUNTY knew that there was a power outage at Port Everglades on December 23, 2021.

161. Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from prior similar incidents.

162. Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from its employees or agents who were in the area and could have easily observed the dangerous condition.

163. Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from their policies and procedures which dictate safe boarding and disembarkation of a vessel.

164. Additionally, BROWARD COUNTY knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe

boarding and disembarkation of a vessel. Further, BROWARD COUNTY knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

165. **BROWARD COUNTY BREACHED ITS DUTIES**. BROWARD COUNTY breached its duty of care owed to HAGLE and was negligent by failing to reasonably supervise its employees and/or its agents. BROWARD COUNTY breached its duties by failing to supervise its employees and/or its agent to ensure they were providing a safe means of disembarking the RCCL *Allure of the Seas.* BROWARD COUNTY breached its duties by failing to supervise its employees and/or its agents to ensure they were warning about the dangers known to BROWARD COUNTY where BROWARD COUNTY invites or reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. BROWARD COUNTY also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

166. **PROXIMATE CAUSE**. BROWARD COUNTY's failure to properly and adequately supervise its employees and/or its agents proximately caused HAGLE's injuries.  Had BROWARD COUNTY properly supervised its employees  and/or its agents, HAGLE would not have been injured on December 23, 2021. Had BROWARD COUNTY properly supervised its employees and/or its agents to ensure they were providing a safe means of disembarking the RCCL *Allures of the Seas*, HAGLE would not have been injured on December 23, 2021. Had BROWARD COUNTY properly supervised its employees and/or its agents to ensure they were warning passengers about the dangerous conditions including the dangerous condition where HAGLE was

injured on December 23, 2021, the crewmember and/or its agents would have warned HAGLE and she would have been aware of the dangerous condition.

167.   **DAMAGES**. BROWARD COUNTY's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against BROWARD COUNTY for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT XI
## NEGLIGENT OPERATION
## AGAINST
## INTERCRUISES

168.     The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

169.     This is an action against INTERCRUISES for its negligent operation of its disembarkation process on December 23, 2021.

170.     INTERCRUISES is vicariously liable and responsible for the negligent acts of its employees and/or its agents.

171.     **DUTIES OWED BY INTERCRUISES.** INTERCRUISES owes a reasonable duty under the circumstances. INTERCRUISES has a duty to provide a safe means of embarking and disembarking vessels using its ports and terminals at Port Everglades, Florida including the *RCCL Allure of the Seas*.

172.     INTERCRUISES had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

173.     INTERCRUISES knew or should have known about the dangerous condition because INTERCRUISES knew that there was a power outage at Port Everglades on December 23, 2021.

174.     Additionally, INTERCRUISES knew or should have known about the dangerous condition from prior similar incidents.

175.     Additionally, INTERCRUISES knew or should have known about the dangerous condition from its employees or agents who were in the area and could have easily observed the dangerous condition.

176.   Additionally, INTERCRUISES knew or should have known about the dangerous condition from their policies and procedures which dictate safe boarding and disembarkation of a vessel.

177.   Additionally, INTERCRUISES knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe boarding and disembarkation of a vessel. Further, INTERCRUISES knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

178.   **INTERCRUISES BREACHED ITS DUTIES**. INTERCRUISES breached its duties by failing to operate of its disembarkation process from the *RCCL Allure of the Seas* in a safe manner on December 23, 2021. INTERCRUISES breached its duties as follows:

a.   Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case;

b.   Failing to take reasonable care for the safety of passengers;

c.   Failing to provide safe walkways and stairways for passengers to disembark the ship;

d.   Failing to provide adequate lighting for passengers to disembark the ship;

e.   Failing to maintain the subject area in good and safe condition;

f.   Failing to appropriately inspect the premises

g.   Failing to promulgate safety rules regarding disembarkation;

h.   Failing to implement safety rules regarding disembarkation;

i.   Failing to train its crewmembers, employees, and agents about safety rules regarding disembarkation;

j.   Failing to enforce safety rules regarding disembarkation;

k.   Allowing an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause incidents or injuries; and

l.   Failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence.

179.   **PROXIMATE CAUSE**. INTERCRUISES's failure to operate its debarkation process in a safe manner on December 23, 2021 proximately and directly caused the Plaintiff's injuries. Had INTERCRUISES operated its debarkation process in a safe manner on December 23, 2021, the Plaintiff would have never been injured.

180.   **DAMAGES**. INTERCRUISES's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against INTERCRUISES for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in

the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT XII**
**NEGLIGENT FAILURE TO WARN**
**AGAINST**
**INTERCRUISES**

181.    The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

182.    This is an action against INTERCRUISES for its negligent failing to warn passengers, including HAGLE, of its hazards, risks or dangers.

183.    INTERCRUISES is vicariously liable and responsible for the negligent acts of its employees and/or its agents.

184.    **DUTIES OWED BY INTERCRUISES.** INTERCRUISES owes a reasonable duty under the circumstances. INTERCRUISES has a duty to warn of dangers known to the Defendant in places where a passenger is invited to may reasonably be expected to visit. INTERCRUISES also has a duty to provide a safe means of embarking and disembarking vessels using its ports and terminals at Port Everglades, Florida including the *RCCL Allure of the Seas*. As part of that, INTERCRUISES has a duty to warn passengers like the Plaintiff about the dangers of disembarking the cruise ship including the dangerous condition where HAGLE was injured on December 23, 2021.

185.    INTERCRUISES had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

186.    INTERCRUISES knew or should have known about the dangerous condition because INTERCRUISES knew that there was a power outage at Port Everglades on December 23, 2021.

187.    Additionally, INTERCRUISES knew or should have known about the dangerous condition from prior similar incidents.

188.    Additionally, INTERCRUISES knew or should have known about the dangerous condition from its employees or agents who were in the area and could have easily observed the dangerous condition.

189.    Additionally, INTERCRUISES knew or should have known about the dangerous condition from their policies and procedures which dictate safe boarding and disembarkation of a vessel.

190.    Additionally, INTERCRUISES knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe boarding and disembarkation of a vessel. Further, INTERCRUISES knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

191.    **INTERCRUISES BREACHED ITS DUTIES.**  INTERCRUISES breached its duties by failing to properly, adequately, and/or reasonably warn HAGLE about dangerous conditions including the dangerous condition where HAGLE was injured on December 23, 2021. INTERCRUISES breached its duties to the Plaintiff by its actions and conduct. INTERCRUISES failed to warn its passengers including the Plaintiff about the power outage and the dangerous of using the stairwell with inadequate lighting. INTERCRUISES through its employees and/or agent failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices.

56

INTERCRUISES failed to reasonably and regularly make audible announcements about the dangerous condition. INTERCRUISES also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

192.    **PROXIMATE CAUSE**. INTERCRUISES's failure to properly and adequately warn HAGLE about dangerous conditions including the dangerous condition where HAGLE was injured on December 23 2021, proximately caused the Plaintiff's injuries. Had INTERCRUISES properly warned HAGLE of the dangerous conditions, HAGLE would have been aware of the dangerous conditions. HAGLE therefore would have never been injured on December 23, 2021.

193.    **DAMAGES**. INTERCRUISES's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against INTERCRUISES for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in

the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT XIII
## NEGLIGENT TRAINING
## AGAINST
## INTERCRUISES

194.     The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

195.     This is an action against INTERCRUISES for its negligent training of its employees and/or its agents.

196.     INTERCRUISES is vicariously liable and responsible for the negligent acts of its employees and/or its agents.

197.     **DUTIES OWED BY INTERCRUISES.** INTERCRUISES owes a reasonable duty under the circumstances. INTERCRUISES has a duty to provide a safe means of embarking and disembarking vessels using its ports and terminals at Port Everglades, Florida including the *RCCL Allure of the Seas*.

198.     INTERCRUISES owes a duty to train its employees and/or its agents how to provide a safe means of disembarking cruise ships. INTERCRUISES knew or should have known of the importance of training its employees and/or its agents how to provide a safe means of disembarking cruise ships. However, despite knowing how and the reason why INTERCRUISES should train its employees and/or its agents how to provide passengers a safe means of disembarking cruise ships including the *RCCL Allure of the Seas*, INTERCRUISES failed to do so.

199.     INTERCRUISES also owes a duty to train its employees and/or its agents to warn of dangers known to INTERCRUISES where INTERCRUISES invites or reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. INTERCRUISES knew or should have known of the importance of training its employees and/or its agents to warn passengers about dangerous conditions.  INTERCRUISES knows or should have known that passengers may not know how dangerous disembarking the cruise ship can be. INTERCRUISES knew or should have known of the importance of training its employees and/or its agents to warn passengers of dangerous conditions verbally, and with warning signs. However, despite knowing how and the reason why INTERCRUISES should train its employees and/or its agents to warn passengers about dangerous conditions, INTERCRUISES failed to do so.

200.     INTERCRUISES had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

201.     INTERCRUISES knew or should have known about the dangerous condition because INTERCRUISES knew that there was a power outage at Port Everglades on December 23, 2021.

202.     Additionally, INTERCRUISES knew or should have known about the dangerous condition from prior similar incidents.

203.     Additionally, INTERCRUISES knew or should have known about the dangerous condition from its employees or agents who were in the area and could have easily observed the dangerous condition.

204.     Additionally, INTERCRUISES knew or should have known about the dangerous condition from their policies and procedures which dictate safe boarding and disembarkation of a vessel.

205.    Additionally, INTERCRUISES knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe boarding and disembarkation of a vessel. Further, INTERCRUISES knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

206.    **INTERCRUISES BREACHED ITS DUTIES**. INTERCRUISES breached its duty of care owed to HAGLE and was negligent by failing to reasonably train its employees and/or its agents. INTERCRUISES breached its duties by failing to train its employees and/or its agent on how to provide a safe means of disembarking the RCCL *Allure of the Seas*. INTERCRUISES breached its duties by failing to train its employees and/or its agents to warn of dangers known to INTERCRUISES where INTERCRUISES invites or reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. INTERCRUISES also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

207.    **PROXIMATE CAUSE**. INTERCRUISES's failure to properly and adequately train its employees and/or its agents proximately caused HAGLE's injuries.  Had INTERCRUISES properly trained its employees and/or its agents, HAGLE would not have been injured on December 23, 2021. Had INTERCRUISES properly trained its employees and/or its agents on how to provide a safe means of disembarking the RCCL *Allures of the Seas*, HAGLE would not have been injured on December 23, 2021. Had INTERCRUISES properly trained its employees and/or its agents to warn passengers about the dangerous conditions including the dangerous

condition where HAGLE was injured on December 23, 2021, the employees and/or its agents would have warned HAGLE and she would have been aware of the dangerous condition.

208.   **DAMAGES**. INTERCRUISES's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.    The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against INTERCRUISES for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT XIV
## NEGLIGENT SUPERVISION
## AGAINST
## INTERCRUISES

209.   The Plaintiff, HAGLE, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

210.   This is an action against INTERCRUISES for its negligent supervision of its employees and/or its agents.

211.   INTERCRUISES is vicariously liable and responsible for the negligent acts of its employees and/or its agents.

212.   **DUTIES OWED BY INTERCRUISES.** INTERCRUISES owes a reasonable duty under the circumstances. INTERCRUISES has a duty to provide a safe means of embarking and disembarking vessels using its ports and terminals at Port Everglades, Florida including the *RCCL Allure of the Seas.*

213.   INTERCRUISES owes a duty to supervise its employees and/or its agents to ensure they are providing a safe means of disembarking the RCCL *Allure of the Seas.* INTERCRUISES knew or should have known of the importance of supervising its employees and/or its agents to ensure they are providing a safe means of disembarking the RCCL *Allure of the Seas.* However, despite knowing how and the reason why INTERCRUISES should supervise its employees and/or its agents to ensure they are providing passengers a safe means of disembarking the RCCL *Allure of the Seas*, INTERCRUISES failed to do so.

214.   INTERCRUISES also owes a duty to supervise its employees and/or its agents to ensure they are warning of dangers known to INTERCRUISES where INTERCRUISES invites or reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. INTERCRUISES knew or should have known of the importance of

62

supervising its employees and/or its agents to ensure they are warning passengers about dangerous conditions.   INTERCRUISES knows or should have known that passengers may not know how dangerous disembarking the cruise ship can be. INTERCRUISES knew or should have known of the importance of supervising its employees and/or its agents to ensure they are warning passengers of dangerous conditions verbally, and with warning signs. However, despite knowing how and the reason why INTERCRUISES should supervise its employees and/or its agents to ensure they are warning passengers about dangerous conditions, INTERCRUISES failed to do so.

215.    INTERCRUISES had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

216.    INTERCRUISES knew or should have known about the dangerous condition because INTERCRUISES knew that there was a power outage at Port Everglades on December 23, 2021.

217.    Additionally, INTERCRUISES knew or should have known about the dangerous condition from prior similar incidents.

218.    Additionally, INTERCRUISES knew or should have known about the dangerous condition from its employees or agents who were in the area and could have easily observed the dangerous condition.

219.    Additionally, INTERCRUISES knew or should have known about the dangerous condition from their policies and procedures which dictate safe boarding and disembarkation of a vessel.

220.    Additionally, INTERCRUISES knew or should have known about the dangerous condition from relevant industry standards, regulations, and codes which dictate safe boarding and disembarkation of a vessel. Further, INTERCRUISES knew or should have known about the

dangerous condition from relevant industry standards, regulations, and codes which dictate adequate lighting for stairwells.

221.   **INTERCRUISES BREACHED ITS DUTIES**: INTERCRUISES breached its duty of care owed to HAGLE and was negligent by failing to reasonably supervise its employees and/or its agents. INTERCRUISES breached its duties by failing to supervise its employees and/or its agent to ensure they were providing a safe means of disembarking the RCCL *Allure of the Seas.* INTERCRUISES breached its duties by failing to supervise its employees and/or its agents to ensure they were warning about the dangers known to INTERCRUISES where INTERCRUISES invites or reasonably expect passengers to go, including the dangerous condition where HAGLE was injured on December 23, 2021. INTERCRUISES also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

222.   **PROXIMATE CAUSE**. INTERCRUISES's failure to properly and adequately supervise its employees and/or its agents proximately caused HAGLE's injuries.   Had INTERCRUISES properly supervised its employees  and/or its agents, HAGLE would not have been injured on December 23, 2021. Had INTERCRUISES properly supervised its employees and/or its agents to ensure they were providing a safe means of disembarking the RCCL *Allures of the Seas*, HAGLE would not have been injured on December 23, 2021. Had INTERCRUISES properly supervised its employees and/or its agents to ensure they were warning passengers about the dangerous conditions including the dangerous condition where HAGLE was injured on December 23, 2021, the crewmember and/or its agents would have warned HAGLE and she would have been aware of the dangerous condition.

223.   **DAMAGES**. INTERCRUISES's negligence proximately caused permanent injuries and damages to HAGLE in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. HAGLE has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff, HAGLE demands Judgment against INTERCRUISES for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate

By:      *s/ Lisa Goodman*
**JOHN H. HICKEY**, **ESQ.** (FBN 305081)
federalcourtfilings@hickeylawfirm.com
**LISA C. GOODMAN, ESQ.** (FBN 118698)
lgoodman@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
*Attorneys for the Plaintiff*