UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-23186-CV-WILLMAS/REID

AUTUMN HAGLE,

    Plaintiff,

v.

ROYAL CARIBBEAN
CRUISES LTD., *et al.*,

    Defendant.
_____/

### REPORT AND RECOMMENDATION ON DEFENDANTS' <u>MOTIONS TO DISMISS</u>

This cause is before the Court on Defendant Broward County's ("Broward County") Motion to Dismiss the Complaint [ECF No. 18], and Defendant Royal Caribbean Cruises, Ltd.'s ("RCCL") Motion to Dismiss the Complaint [ECF No. 19], (collectively the "Motions to Dismiss"). The Motions to Dismiss were referred to me by the Honorable Kathleen M. Williams for a report and recommendation. [ECF No. 21]. For the reasons outlined below, it is **RECOMMENDED** that Broward County's Motion to Dismiss the Complaint [ECF No. 18], which addresses Counts VI through X, be **GRANTED**, and RCCL's Motion to Dismiss the Complaint [ECF No. 19] which addresses Counts I through V, be **GRANTED as to Counts II through V, but DENIED as to Count 1**.

### BACKGROUND

The following facts from the Complaint are assumed to be true for purposes of evaluating the Motions to Dismiss. Plaintiff Autumn Hagle ("Hagle" or "Plaintiff") was a passenger aboard RCCL's ship Allure of the Seas (the "ship"). [ECF No. 1 at ¶ 11]. On December 23, 2021, the ship

1

stopped at Port Everglades, Florida, to disembark. [*Id.* at ¶¶ 4; 13]; *see also* [ECF No. 18 at 1–2]. RCCL leased a Port Everglades cruise ship terminal from Broward County, who owned the terminal. [ECF No. 1 at ¶ 13]. Broward County contracted with Intercruises Shoreside & Port Services, Inc. ("Intercruises") who in fact provides embarkation and debarkation staff to process passengers arriving at Port Everglades. [*Id.*]. RCCL pays Broward County for Intercruises' services and, in turn, Broward County pays Intercruises. [*Id.*].

On December 23, 2021, Port Everglades experienced a power outage. [*Id.* at ¶ 19]. Broward County and Intercruises knew that Port Everglades was experiencing a power outage and communicated this fact to RCCL. [*Id.*]. Despite the power outage, RCCL required its passengers to disembark the cruise ship at Port Everglades. [*Id.* at ¶ 21]. Defendants knew or should have known that escalators and elevators were not working because of the power outage. Defendants did not warn passengers that, because of the power outage, certain areas where they would disembark were poorly lit. [*Id.* at ¶¶ 20–21]. Defendants knew that "passengers would have to descend stairways while holding their luggage in the darkness." [*Id.*]. Defendants' employees guided passengers through the terminal and into a stairwell that "was pitch black." [*Id.* at ¶ 22]. To assist passengers navigating through the dark stairwell, Defendants' employees "lined up along the stairwell moving their [cellular] phone lights up and down the stairs to 'illuminate' the steps." [*Id.*]. The passengers were instructed to proceed down the stairwell and Plaintiff did as she was instructed. [*Id.*]. As Plaintiff walked down the stairwell carrying her luggage she was "cautious and was watching where she was going." [*Id.*]. Despite this, because of insufficient lighting, Plaintiff could not see the steps as she descended, and fell forward. [*Id.*]. As a result of her fall, she "suffered severe and permanent injuries including but not limited to avulsion fracture of the anterior process of the calcaneus of the right foot, avulsion fracture of the dorsum talus and

navicular of the right foot, and avulsion fracture involving the medial portion of the navicular bone abutting the os navicularis of the right foot." [*Id.* at 23].

As a result, Plaintiff filed this lawsuit against RCCL, Broward County, and Intercruises, seeking money damages including interest from the date of the incident. *See* [*Id.*]. In her 14-count Complaint she asserts five counts against RCCL for: (I) failure to provide a reasonably safe means of disembarking; (II) negligent operation; (III) negligent failure to warn; (IV) negligent training; and (V) negligent supervision. She asserts five causes of action against Broward County: (VI) negligent operation; (VII) negligent failure to warn; (VIII) negligent retention; (IX) negligent training; and (X) negligent supervision. She also asserts three counts against Intercruises for: (XII) failure to warn; (XIII) negligent training; (XIV) negligent supervision. [*Id.*]. Broward County and RCCL subsequently filed their Motions to Dismiss. *See* [ECF Nos. 18; 19].

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To achieve this end, pleadings must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-harmed-me accusation." *Sinaltrainal v. Coca-*

*Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (internal quotation marks and citation omitted), *abrogated on other grounds by Mohamed v. Palestinian Autho.*, 566 U.S. 449 (2012). Rather, the plausibility "standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545).

In considering a Motion to Dismiss, courts are limited to considering the complaint and attachments thereto, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). Further, although "[i]n the rule 12(b) motion-to-dismiss context, a judge generally may not consider materials outside of the four corners of a complaint … [a] court may consider a document that has been attached to a motion to dismiss, however, if it is central to the plaintiff's claims and its authenticity is not challenged." *Pouyeh v. Bascom Plamer Eye Inst.*, 613 F. App'x 802, 808 (11th Cir. 2015) (citing *Day v. Taylore*, 400 F.3d 1272, 1275–76 (11th Cir. 2005)).

## **DISCUSSION**

As an initial matter, it must be noted that the parties agree, and this Court finds, that the instant case is controlled by maritime law. "Federal maritime law applies to actions arising from alleged torts 'committed aboard a ship sailing in navigable waters.'" *Smolinkar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989)). Federal courts' admiralty jurisdiction also extends to cases involving the disembarkation process of passengers from cruise ships. *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1318 (S.D. Fla. 2015). As this case involves an incident in which Plaintiff was disembarking a cruise ship, maritime law applies.

Defendants raise the same four arguments in their Motions to Dismiss: (1) that Plaintiff's claims must be dismissed because they contain mere conclusory allegations and fail to plead notice on Defendants' part; (2) that the dangerous condition leading to Plaintiff's injuries was open and obvious; (3) Plaintiff impermissibly comingles claims for direct and vicarious liability; and (4) Plaintiff's negligent operation claims are not cognizable under federal admiralty law. *See generally* [ECF Nos. 18; 19]. Each of these arguments will be addressed in turn.

I.  **The Sufficiency of Notice as to Plaintiff's Negligence Claims**

Defendants argue that Plaintiff's claims for negligent failure to warn, negligent retention, negligent training, and negligent supervision all fail because those claims require Defendants to be on notice of the alleged negligent conduct or condition, and that the Complaint merely asserts notice through conclusory allegations without factual support.

"Under maritime law, the duty of care owed by a cruise operator to its passenger is ordinary reasonable care under the circumstances, which requires, as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition." *Harding v. NCL (Bahamas) Ltd.*, 90 F. Supp. 3d 1305, 1307 (S.D. Fla. 2015).

What connects Plaintiff's various negligence-based causes of action is that for liability to attach, the defendant must have notice of the negligent conduct or condition at issue. Here, Plaintiff asserts five theories of notice: (1) notice through the power outage itself; (2) notice through prior similar incidents; (3) notice through the presence of Defendants' employees; (4) notice through policies and procedures; and (5) notice of industry standards.

A.  **RCCL's Breach of Non-Delegable Duties (Count I)**

In Count I Plaintiff alleges that RCCL breached its non-delegable duty to provide a reasonably safe means of disembark from the ship. [ECF No. 1 at ¶¶ 29–35].

5

As a common carrier, cruise ship operators owe their passengers a nondelegable duty to provide a safe means in which their passengers may board and disembark their ships. *See, e.g., Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1319–20 (11th Cir. 2003) (explaining that a "high degree of care is demanded of common carriers toward their passengers … [and that part of] this high degree of care is the duty to maintain reasonable, safe means for passengers to board and disembark … [and] that this obligation is nondelegable, and [] even the slightest negligence renders a carrier liable") (internal quotation marks and citations omitted).

Here, RCCL argues that Count I should be dismissed because Plaintiff fails to adequately allege that it had notice of the dangerous condition such that it could have breached its non-delegable duty to provide reasonably safe egress to Plaintiff. This, however, is inaccurate. Of the five bases for notice Plaintiff puts forth, the notice through the power outage itself is sufficient to state a plausible claim as to Count I. Plaintiff alleges that the fact Port Everglades was experiencing a power outage was communicated to RCCL and the ship. [ECF No. 1 at ¶ 19]. Further, Plaintiff contends that RCCL (and the other Defendants) knew that to disembark its passengers would have to go through areas that were pitch black, that the elevators and escalators were not working, and therefore passengers would have to go down dark stairwells while holding their luggage. [*Id.* at ¶¶ 20, 24]. Taking these allegations as true, which we must, Plaintiff has pleaded sufficient facts to satisfy the pleading requirement for notice as to Count I. Count I should not be dismissed.

## B. Negligent Operation Claims Under Maritime Law

In Count II of the Complaint Plaintiff asserts a claim for negligent operation against RCCL and does the same in Count VI against Broward County.

"[T]he basis for the negligent mode of operation theory is the claim that the specific mode of operation selected by the premises owner or operator resulted in the creation of a dangerous or

unsafe condition." *Torrents v. Carnival Corp.*, No. 19-24760-CIV, 2022 WL 3154511, at *3 (S.D. Fla. Aug. 8, 2022) (quoting *Markowitz v. Helen Homes of Kendall Corp.*, 826 So. 2d 256, 260 (Fla. 2022)). "In other words, a negligent mode of operation claim looks to a business's *choice of a particular mode of operation* and not events surrounding the plaintiff's accident." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

Negligent operation claims are not recognized under federal maritime law. *See, e.g., Id.* (noting that claims for "negligent mode of operation are not recognized in federal admiralty law); *Malley v. Royal Caribbean Cruises, Ltd.*, 713 F. App'x 905, 910 (2017) (explaining that "[n]o court has ever held that this claim exists in federal admiralty law"); *Stewart-Patterson v. Celebrity Cruises, Inc.*, No. 12-20902-CIV, 2012 WL 2979032, at *3 (S.D. Fla. July 20, 2012) (explaining that "maritime law does not support a stand-alone claim based on Defendant's 'mode of operation' unconnected to Plaintiff's specific accident").

Here, Plaintiff does not argue that she is not raising negligent mode of operation claims against Defendants. Rather, she argues that the cases rejecting this cause of actions viability under federal admiralty law do so solely in relation to foreign transitory substances cases. [ECF No. 27 at 16]. This is not the case. As Defendant explains *Malley* revolved around an injury sustained because of a stationary and solid object. *See* [ECF No. 35 at 1–2]. Thus, the law is unambiguously clear that negligent mode of operation claims are not cognizable under federal maritime law. Alternatively, Plaintiff provides that "to the extent that the negligent operation may not be a valid [claim], Count VI [and II] can be converted into a general negligence claim[.]" [ECF No. 27 at 16]. As a plaintiff cannot amend their Complaint in their response to a Motion to Dismiss, Count II and Count VI should be dismissed, and Plaintiff should be permitted to file an Amended

Complaint asserting a general negligence claim against RCCL and Broward County in lieu of the negligent mode of operation claim.

### C. Failure to Warn (Counts III and Count VII)

Under maritime law, a cruise operator owes a duty to all passengers to exercise reasonable care. *Keefe v. Bahama v. Cruise Line, Inc.*, 867 F.3d 1318, 1321 (11th Cir. 1989). This "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where … the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Id.* at 1322. As part of its duty of care "a cruise line owes its passengers a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Chapparo v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

Here, both Broward County and RCCL argue that in Count III and Count VII Plaintiff fails to provide any basis indicating they were on notice of the dangerous conditions caused by the power outage thereby triggering their duty to warn. As discussed above, the power outage itself, and the subsequent decision to proceed with disembarkation, is sufficient to establish Defendants' notice of the potentially dangerous conditions caused by the power outage. In fact, Defendants both argue (as will be addressed later in this Report) that the dangers posed by the power outage were open and obvious. What distinguishes this case from cases involving dangerous conditions such as those caused by foreign transitory substances, is that the power outage itself is instantly noticeable and observable. While a liquid or other substance on the floor may take time to discover, the power outage—which appears to have impacted all of Port Everglades—is instantly apparent. As such, any argument Defendants make that they did not have notice as to this issue, thus

triggering a duty on their part to warn passengers of the dangers of disembarking in such a condition, is without merit.

Defendants' argument that Plaintiff's negligent failure to warn claims should be dismissed because the alleged dangerous condition was open and obvious is also of no merit. An "[o]pen and obvious condition[] are those that should be obvious by the ordinary use of one's senses." *Singh*, 576 F. Supp. 3d at 1186 (quoting *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015)). The existence of such an open and obvious condition may preclude liability for failure to warn because the open and obvious nature of the condition prevents it from being characterized as a hidden danger. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1267 (11th Cir. 2020); *see also Martin v. Wal-Mart Stores E., LP*, 21-20889-CIV, 2022 WL 1686914, at *4 (S.D. Fla. May 26, 2022) (citation omitted). RCCL may still be liable, however, even if the danger was obvious. First, an open and obvious risk can require the person who encounters it to proceed with reasonable care-requiring a comparative fault analysis that does not entirely preclude the defendant's liability. *Carroll v. Carnival Corp.*, 955 F.3d at 1268. Second, "[e]ven where a plaintiff may be able to ascertain a condition via his [or her] sense, however, the conditions may not necessarily alert a reasonable observer as to the extent of the danger, triggering a duty to warn." *Singh*, 576 F. Supp. 3d at 1186.

Here, the dangerous condition at issue is the lack of lighting caused by the power outage while Plaintiff was being led down the dark stairwell before her fall. *See generally* [ECF No. 1]. Indeed, walking down a dark stairwell may seem like an obvious dangerous condition. Yet, how clearly dangerous this was in the context of being led down the stairs with lighting provided by the disembarkation personnel from their cellular phones is less clear. At this juncture, this is an issue that is best addressed through ongoing discovery. However, while Counts III and VII are

9

appropriate, because they commingle counts for both direct and vicarious liability within the same count, for the reasons explained in the next section, the Counts should be dismissed for failure to comply with the pleading requirements of Rules 8(a) and 10(b).

### D. Comingling of Direct and Vicarious Liability

Defendants contend that the counts in the Complaint against them should "be dismissed as a 'shotgun pleading' because Plaintiff improperly commingle claims for direct negligence and vicarious liability." [ECF No. 18 at 9–10]; *see also* [ECF No. 19 at 7–8]. The Court agrees.

A shotgun pleading is "one in which 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief'—does not comply with the standards of Rules 8(a) and 10(b)." *Woodley*, 472 F. Supp. 3d at 1201 (quoting *Anderson v. Dist. Bd. Of Trs. Of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). The Eleventh Circuit has described the different types of shotgun pleadings as follows:

> Though the groupings cannot be too finely drawn, we have identified four rough types of categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which defendants the claim is brought against.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (citation omitted). What each of these types of shotgun pleadings have in common is that they fail in some way to provide the defendant with adequate notice of the claims brought against them and the factual basis underpinning such claims. *Woodley*, 472 F. Supp. 3d at 1201.

Here, Defendants argue that Plaintiff has committed the third sin of shotgun pleading as described by the *Weiland* court, by commingling claims for direct and vicarious liability in Counts I–X. First, it must be noted that for Count I, Plaintiff does not allege any form of vicarious liability. Consequently, RCCL's argument that Count I should be dismissed on shotgun pleading grounds can quickly be dismissed. In Counts II–V against RCCL and VI, VII, IX, and X against Broward County, Plaintiff does assert claims for direct and vicarious liability together in each count. [ECF No. 1 at ¶¶ 37, 38, 52, 53, 69, 70, 86, 87,103, 104, 116, 117, 139, 140, 154, 155]. And, in alleging vicarious liability against RCCL, Plaintiff cited generally to *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014), a case in which the Eleventh Circuit Court of Appeals held that the principles of vicarious liability applied to a passenger's negligence claim for onboard medical care from medical professionals. Also, in alleging vicarious liability, Plaintiff only states generally that RCCL and Broward County are responsible for their employees "and/or agents," including no indication which agent it intends to hold responsible.

In doing so, Plaintiff has confused Defendants and this Court as to whether these counts are meant to support a vicarious liability claim or direct liability claim, which is one of the basic reasons shotgun pleadings are so frowned upon. *See, e.g., Sexton v. Carnival Corp.*, No. 18-20629-CIV, 2018 WL 3405246, at *2 (S.D. Fla. July 12, 2018) (dismissing part of the plaintiff's complaint because "the allegations in [the count of the complaint] conflate two theories of liability: direct negligence and vicarious liability. Comingling direct and vicarious liability is an improper pleading practice"); *Wohlford v. Carnival Corp.*, No. 17-20703-CIV, 2017 WL 7731225, at *3 (S.D. Fla. May 11, 2017) (noting that "[p]leading a direct negligence claim together with a vicarious liability claim … is improper, confusing, and violates Rule 10(b)").

11

Plaintiff contends that these counts do not commingle direct and vicarious liability because she "may choose to proceed under a theory of direct liability, vicarious liability, or both." [ECF No. 27 at 15] (quoting *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, (11th Cir. 2021)). While this is true, Plaintiff appears to conflate direct and vicarious liability by arguing that since Defendants act through their employees, their "direct liability is based on [their] vicarious liability … [and therefore] pleading direct or vicarious liability within one count does not make the Complaint a shotgun pleading." [*Id.* at 15]. This is where Plaintiff's argument fails. While Plaintiff can travel under a theory of direct liability, vicarious liability, or both for a given claim, they are not the same cause of action. Rather, they are distinct theories of liability, and to assert both in one count is impermissible shotgun pleading.

E. **Negligent Training and Supervision (Counts IV, V, IX, and X)**

"Negligent supervision and negligent training are both recognized duties under federal maritime law." *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1310 (S.D. Fla. 2021). Negligent supervision arises "when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment." *Id.* (quoting *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012)). To establish negligent supervision, a plaintiff must demonstrate "that (1) the employer received actual or constructive notice of an employee's unfitness, and (2) [that] the employer did not investigate or take corrective action such as discharge or reassignment." *Id.* at 1311 (quoting *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-CV-23733-UU, 2016 WL 6330587, at *4 (S.D. Fla. Oct. 27, 2016)). Negligent training, on the other hand, focuses on the employer's negligent implementation of a training program for its employees, with such negligence causing a plaintiff's injuries. *Id.*

Plaintiff's negligent supervision claims against Defendants, Counts V and X, fail because there is no factual basis in the Complaint to demonstrate that Defendants were on notice of its specific employees' unfitness. Plaintiff's negligent training claims, Counts IV and IX, also fail, although for different reasons. Unlike the negligent retention and supervision claims, which focuses on a given employee's unfitness, the negligent training claims focus on Defendants' own actions in properly training its employees. The primary issue with Plaintiff's negligent training claims is not a lack of notice to Defendants. Rather, the issue here is that Plaintiff provides little more than conclusory statements that Defendants negligently trained their employees or contractors. The Complaint is bereft of any facts to support this assertion. Plaintiff merely states that Broward County and RCCL failed to train its employees to provide "a safe means of disembarking the RCCL *Allure of the Seas*" and also failed to train its employees to warn of the dangers in disembarking "including the dangerous condition where [Plaintiff] was injured on December 23, 2021." [ECF No. 1 at ¶¶ 82, 150]. Plaintiff provides little more than factually insufficient, conclusory, and boilerplate allegations that Defendants implemented a deficient training program or failed to adequately train their employees or contractors. *See, e.g., Doe v. NCL (Bahamas) Ltd.*, No. 18-20060-CIV, 2018 WL 3848421, at *3 (S.D. Fla. Aug. 13, 2018) (granting motion to dismiss regarding negligent training claim because the plaintiff failed to plead sufficient facts that the defendant's negligent implementation or operation of a training program caused the alleged harm); *Doe v. NCL (Bahamas) Ltd.*, 2016 WL 6330587, at *4 (same). As such, these claims should be dismissed.

### F. Negligent Retention Claim Against Broward County (Count VIII)

"To plead a *prima facie* claim for negligent hiring or retention, a plaintiff must demonstrate (1) the incompetence or unfitness of the contractor [or employee]; (2) the defendant's knowledge

of the contractor's [or employee's] unfitness; and (3) that the contractor's [or employee's] incompetence or unfitness proximately caused the plaintiff's injuries." *Woodley*, 472 F. Supp. 3d at 1205 (citation omitted). "Negligent selection or hiring and negligent retention are two separate and distinct causes of action … [with] [t]he only difference between negligent selection and negligent retention claims [being] the time at which the employer or principle is charged with knowledge of the employee or contractor's unfitness." *Singh v. Royal Caribbean Cruises, Ltd.*, 576 F. Supp. 3d 1166, 1183 (S.D. Fla. 2021). Negligent selection or hiring pertains to what the defendant knew prior to the hiring, whereas negligent retention concerns what the defendant knew after the employee or contractor was retained. *Id.* at 1184.

Here, unlike her failure to warn claims, Plaintiff fails to adequately establish Broward County was on notice of the alleged incompetence of Intercruises' employees. To be sure, Plaintiff has done enough to survive a motion to dismiss as to whether Intercruises' employees or contractors acted incompetently, by leading disembarkation through a dark stairwell while using nothing more than the flashlights on their cellphones to illuminate the area. Further, the Complaint also contains enough factual detail to make a *prima facie* showing that this behavior proximately caused Plaintiff's injuries. Nothing in the Complaint, however, demonstrates that Broward County was on notice of this sort of unfitness by Intercruises' employees. The power outage itself would not have provided Broward County notice as to this issue. The various prior similar incidents Plaintiff relies on as a form of notice in the Complaint involve very different factual circumstances than the instant case. While these prior incidents all involve cruise passengers sustaining injuries during disembarkation, the similarities end there. None of these cases involve disembarkation during a power outage through a poorly lit stairwell. As such, these prior incidents would not put

Broward County on notice of Intercruises' employees' inability to safely escort passengers in such a situation.

Further, as this cause of action deals with Broward County's knowledge of Intercruises' employees' unfitness, the presence of Intercruises' employees during the subject incident would not establish Broward County's notice of these employees' unfitness *prior* to this incident. For the same reason, Plaintiff's argument that Broward County was on notice through policies, procedures, or industry standards fails. The Complaint does not explain how Broward County's internal policies and procedures, or industry standards would provide it notice of specific employees' unfitness. While these may speak to Broward County's knowledge of the applicable standard of care, or the sort of training it should be providing to its employees, it does not support any inference regarding a specific employee's lack of competency. Consequently, Plaintiff has failed to establish Broward County's notice regarding the negligent retention claim and Count VIII should be dismissed.

## CONCLUSION

For the foregoing reasons it is **RECOMMENDED** that Defendant Broward County's Motion to Dismiss the Complaint [ECF No. 18], which addresses Counts VI through X, be **GRANTED**. Defendant Royal Caribbean Cruises, Ltd.'s Motion to Dismiss the Complaint [ECF No. 19] which addresses Counts I through V, be **GRANTED as to Counts II through V, but DENIED as to Count 1**. In any event, for the reasons stated here, the Undersigned recommends that Plaintiff be granted leave to file an amended complaint.

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **FOURTEEN DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District

15

Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**SIGNED** this 1st day of May, 2023.

_[signature]_
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **U.S. District Judge Kathleen M. Williams; and**

**All Counsel of Record**